JOURNAL ENTRY AND OPINION *Page 810 
The affiliates (usually called "subsidiaries") of Ohio corporations can choose to pay municipal income taxes by consolidating their returns with other affiliates of the parent corporation. After having filed consolidated tax returns in the city of Cleveland for nine years, six affiliates of BP America asked the administrator of the Central Collection Agency ("CCA") for permission to deconsolidate their returns because, they no longer transacted any business nor had any connection with the city. The administrator denied permission, so the affiliates brought a declaratory judgment action seeking a declaration of the legality of CCA's refusal. The court found the taxation of the "non-nexus" affiliates violated Article XVIII, Section 3 of the Ohio Constitution and R.C. 718.02, and enjoined the city and CCA from collecting or levying taxes on the non-nexus affiliates.
The parties filed cross-motions for summary judgment, and the facts are not contested; we therefore decide the issues as a matter of law. See Civ.R. 56. The city belongs to the CCA, an entity that collects income taxes for member municipalities. CCA regulation Section 11:04 permits corporate taxpayers with affiliates to file consolidated tax returns under the following circumstances:
 A. Consolidated returns may be filed by a group of corporations who are affiliated through stock ownership. For a subsidiary corporation to be included in a consolidated return, 80% of its stock must be owned by the other members of the affiliated group. A consolidated return must include all companies which are so affiliated, along with all required schedules and amount and manner of determining income subject to municipal income tax.
 B. Once a consolidated return has been filed for any taxable year the consolidated group must continue to file consolidated returns in subsequent years unless:
 1. Permission in writing is granted by the Administrator to file separate returns; * * *
In October 1988, the six plaintiff affiliates of BP America: BP Communications Alaska, Inc., BP Developments Australia Ltd., BP Exploration (Alaska) Inc., BP Offshore Pipelines, Inc. [Texas], BP Pipelines (Alaska), Inc., and BP Transportation (Alaska), Inc., filed with the administrator of the CCA an authorization and consent of subsidiary corporations to be included in a consolidated city of Cleveland net profits tax return for tax year 1987. BP America also filed a consolidated federal tax return and its 1987 federal tax return listed these six affiliates, as well as one hundred twenty-two other affiliates. It appears that BP was the only entity filing a consolidated tax return with the CCA. *Page 811 
BP continued to file consolidated returns including these six affiliates until November 1, 1996. At that time, BP asked the administrator to exclude these six affiliates from the consolidated return on grounds that they did not have any nexus with the city. The administrator requested additional information from BP, and also asked BP to prepare "pro forma" returns for each of the affiliates in question and a pro forma consolidated return for the remaining affiliates contained in the consolidated group. BP did as requested and asked the administrator to note that "the removal of the six affiliates has a small impact on the BP America consolidated CCA tax liability prior to the utilization of net operating loss carryovers."
The administrator denied the request. In a letter to BP the administrator wrote, "[a]s with the IRS, the election to file consolidated returns is irrevocable and is binding on all subsequent years. It is our understanding that no request has been made of the IRS to seek permission to discontinue filing consolidated returns." The administrator also highlighted two areas of concern. First, noting the consistency of BP's previous filings including the affiliates and "the very nature of consolidated returns," the administrator expressed concern that CCA "did not have the means to verify the effects of intercompany transactions," presumably meaning that the task of verifying which, if any, of BP's many affiliates doing business within the city would be too onerous. Second, the administrator had concerns over BP's consolidated "net loss carryfoward." The administrator wrote, "[a]s the NOL [net operating loss] is considerable, what we wish to avoid is having losses from prior years that may relate to these six affiliates taken against any future income. This would not be fair to the communities involved."
The court held as follows:
 This Court finds that defendants' refusal to allow plaintiffs to deconsolidate their central collection agency tax return for tax year 1996 and thereafter violates Article XVIII, Section 3
of the Ohio Constitution and R.C. 718.02 because the affiliates of BP America that are parties to this case do not have a nexus to the municipal boundaries of the taxing authority since these parties do not conduct business, derive net profits from or otherwise maintain a nexus within the municipal boundaries of the defendants. Accordingly, this Court orders the following:
 1) the taxation of the non-nexus plaintiffs in this case is violative of Article XVIII, Section 3 of the Ohio Constitution and R.C. 718.02;
 2) the defendants are enjoined from collecting or levying taxes on the non-nexus plaintiffs for tax year 1996 and thereafter;
 3) the defendants are to allow BP America's 1996 tax return to be filed; *Page 812 
 4) the defendants are to make adjustments to plaintiffs' tax obligations for tax year 1996 and thereafter that are consistent with this order, including a refund of any tax overpayment, if necessary.
The city raises two procedural issues that it maintains bar this appeal. First, the city maintains BP's claims are barred because it failed to raise them within the applicable statute of limitations. Second, the city claims BP failed to exhaust its administrative remedies so the court should not have proceeded to render a declaratory judgment.
 A
R.C. 2723.01 states:
 Courts of common pleas may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them when collected, without regard to the amount thereof, but no recovery shall be had unless the action is brought within one year after the taxes or assessments are collected.
It is an affirmative defense to a claim for relief that a plaintiff failed to file an action within the applicable statute of limitations period. See Civ.R. 8(C). Affirmative defenses must be raised in a responsive pleading or they will be considered waived. See Mills v. Whitehouse Trucking Co. (1974), 40 Ohio St.2d 55, syllabus. Although the city listed the statute of limitations as one of its affirmative defenses, it did not at any time present the defense to the court by motion or otherwise. In fact, the city raises the statute of limitations for the first time on appeal. We adhere to settled appellate practice and refuse to address this argument for the first time on appeal.L.B. Folding Co. v. Gergel-Kellman Corp. (1994), 94 Ohio App.3d 511,521.
The city nonetheless maintains we can address the statute of limitations issue because our review in this case is de novo. The only circumstance where the de novo nature of review permits a court to address issues not raised below is in administrative appeals to the court of common pleas. In Reed v. MTD Products,Inc. (1996), 111 Ohio App.3d 451 and Grant v. Ohio Dept. ofLiquor Control (1993), 86 Ohio App.3d 76, both courts of appeals held that a claimant appealing from the Industrial Commission could raise a claim for a new injury for the first time in the court of common pleas. The important distinction in those cases is that the appeal to the court of common pleas is a trial denovo, a significantly different creature than our de novo
standard of appellate review. In a trial de novo, the court of common pleas conducts a new trial, see Marcum v. Barry (1991),76 Ohio App.3d 536, 539, while de novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision. *Page 813 Hall v. Ft. Frye Loc. School Dist. Bd. of Edn. (1996),111 Ohio App.3d 690, 694. The de novo appellate review does not supersede our settled practice of not addressing issues raised for the first time on appeal.
 B
The city next argues the court should not have entertained the declaratory judgment action because BP failed to exhaust its administrative remedies. In a motion to dismiss, the city informed the court that BP had, in fact, sought an administrative remedy by filing an administrative appeal with the city board of review on April 24, 1997, some ten months before filing its complaint for a declaratory judgment. In that notice of appeal, EP claimed the administrator "abused his discretion and erroneously refused to follow Section 191.1104(b) of the Cleveland Income Tax Ordinance and Section 11:05 of the Central Collection Agency Administrator's Rules and Regulations * * * by denying permission to file separate returns." BP asked for a confidential evidentiary hearing. BP contested the motion by noting exhaustion of administrative remedies is not required prior to a taxpayer challenging the authority to tax.
Ordinarily, exhaustion of administrative remedies is considered a prerequisite to further judicial review. Noernberg v. City ofBrookpark (1980), 63 Ohio St.2d 26. Two exceptions to this general rule appear to exist:
 First, if there is no administrative remedy available which can provide the relief sought, or if resort to administrative remedies would be wholly futile, exhaustion is not required. Second, exhaustion of remedies is unnecessary when the available remedy is onerous or unusually expensive.
Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 17 (citations omitted).
The first exception to exhaustion of administrative remedies applies when it would be impracticable to pursue the administrative remedy either because the administrative entity lacks the authority to render relief or because a speedy resolution may be necessary to challenge an administrative rule or regulation. The board of tax appeals is an administrative agency and is without jurisdiction to determine the constitutional validity of a statute.State ex rel. Mallory v. Pub. Emp. Retirement Bd. (1998),82 Ohio St.3d 235, 240; Cleveland Gear Co. v. Limbach (1988),35 Ohio St.3d 229, paragraph one of the syllabus. It would therefore be futile to force a party to exhaust an administrative appeal to an agency that can afford no meaningful relief. Nemazee v. Mt. Sinai Med.Ctr. (1990), 56 Ohio St.3d 109, 115. *Page 814 
But apart from seeking a declaration on the constitutionality of a statute, it is an entirely different matter to assert that a party's actions were unconstitutional. That kind of allegation does not draw into question the validity of the statute or law. Instead, it questions whether the party's actions were in accordance with the law. Administrative review is suited to that task, and this is a quasi-judicial function that could be performed by the board of review. See Snavely v. Erie Cty. Bd.of Revision (1997), 78 Ohio St.3d 500, 502.
BP requested a declaration on the constitutionality of CCA's collection of income tax from non-nexus affiliates, but that request did not specifically raise the constitutionality of a statute or ordinance; instead, it raised an issue as to the constitutionality of CCA's actions as applied to the ordinances. In its complaint, BP cited to Cleveland Codified Ordinance No. 191.0501(e) which states that city income tax with respect to a corporation is imposed:
 On the portion attributable to the City of the net profits earned * * * of all corporations derived from sales made, work done, services performed or rendered and business or other activities conducted in the City * * *
The city conceded that BP's affiliates did not conduct any business in the city — the nexus issue here — but claimed that BP's initial request for consolidation was irrevocable and binding in all subsequent years. BP's specific claim for relief asked the court:
 "to declare that it is illegal and unconstitutional for Defendants to directly or indirectly impose on or collect taxes from Plaintiffs, or to force Plaintiffs to be included in any CCA tax return, consolidated or otherwise, on the grounds that Defendants have no tax jurisdiction over the Plaintiffs as a matter of law.
This claim for relief does not require the court to determine the constitutionality of the city's taxing statute; to the contrary, it inferentially agrees that the city ordinance is valid because it asks the court to find the city's actions violate the statute. In fact, BP's merit brief on appeal contains an argument heading stating, "Cleveland Ordinances and CCA Regulations Require Local Nexus." This necessarily concedes the validity of the law.
BP argues it could bypass administrative procedures on authority of R.C. 2723.01, which states, "[c]ourts of common pleas may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them when collected." Because it is challenging CCA's power to tax, BP claims it does not have to exhaust its administrative remedies.
R.C. 2723.01 gives the court of common pleas original jurisdiction to determine the illegality of taxation. Fox v. Lakewood (1992), 84 Ohio App.3d 202. 205. A number of cases hold that a party does not have to pursue administrative remedies when seeking to enjoin the illegal collection of *Page 815 
taxes under R.C. 2723.01. See, e.g., Smith v. Ohio Dept. of Taxation (1975),46 Ohio App.2d 132; Rocca v. Wilke (1977), 53 Ohio App.2d 8.
But we distinguish those cases because they questioned thelegal authority to collect a tax and did not concern the amount
of the tax. For example, in Conn v. Jones (1926), 115 Ohio St. 186, cited by BP as supporting its position, the court stated:
 The apparent conflict in the decisions arising between the line of cases ending with Hammond v. Winder, 112 Ohio St. 158, 147 N. B. 94, and the line of cases indicated, is quite simply explained when we note that the cases in which injunction is denied are cases concerning valuation, or amount of assessment, and the cases in which injunction is granted are cases which contest the very power to lay the tax.
Like Conn, the distinction here is that the city has the legal authority to collect taxes from affiliates who choose to file a consolidated return. BP agrees the city has authority to collect tax from affiliates with a nexus to the city, so its power to levy a tax in the first instance is not in question. That being the case, exhaustion of administrative remedies would apply since the queston becomes the amount of tax that could be collected.
Some might argue we are making a fine distinction, but we believe exhaustion of administrative remedies is particularly applicable in this case. The board of tax of appeals has special expertise in tax matters and would be able to compile an adequate record, thus preparing "the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court * * *." Nemazee v. Mt. Sinai Med.Ctr., 56 Ohio St.3d at 110 (internal quotation omitted). In fact, BP conceded at oral argument that administrative proceedings are still pending. The complexities of this case, highlighted by continuing references to the absence of certain salient facts in the record, convinces us that administrative proceedings would flesh out the issues in much more greater detail.
We can further defend our fine distinction by noting that were we to interpret R.C. 2723.01 as suggested by BP, we would permit a R.C. 2723.01 action for any claim that a tax was wrongfully computed, as opposed to limiting it to those levied with no authority whatsoever. BP's argument, taken to its logical extreme, would mean that any incorrectly computed tax would necessarily be "illegal" because overtaxation would exceed the power of the taxing authority. In fact, any complaint about taxation would conceivably fall under the "illegal" heading and would be subject to a R.C. 2723.01 action. This would effectively nullify the doctrine of exhaustion of administrative remedies. The doctrine is too *Page 816 
well-established for us to countermand, particularly when, as here, the administrative agency has special expertise. There must be a distinction, and we find the distinction must be the power of the municipality to tax at all versus mistakes made while levying the tax. This presents a clear line of demarcation and upholds the administrative review process.
We note the court's ruling did not consider that BP requested consolidation of its affiliates or that other affiliates with no apparent nexus to the city have not asked to be deconsolidated. While we express no opinion on these facts, we recognize they could be important to an administrative agency considering the case. These facts would likely receive a hearing in the administrative process and create a fuller record upon which a court could base a decision. This is the benefit of forcing a party to exhaust administrative remedies.
For these reasons, we find the court erred by refusing to dismiss the case for failure to exhaust administrative remedies. The second assignment of error is overruled. Our holding necessarily moots consideration of the remaining substantive assignments of error. See App.R. 12(A)(2).
Judgment reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., CONCURS. TIMOTHY E McMONAGLE, PJ., CONCURSIN JUDGMENT ONLY.